681 F.2d 255
 The FORMALDEHYDE INSTITUTE, INC., for and on behalf of its
members; Virgil E. Stewart Jr.; and William E.
Nash, Petitioners,
v.
UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Respondent.
C. P. CHEMICAL COMPANY, INC., et al., Petitioners,
v.
CONSUMER PRODUCT SAFETY COMMISSION, Respondent.
 Nos. 82-4135, 82-4136.
 United States Court of Appeals,
Fifth Circuit.
 July 2, 1982.
 
 Michael S. Marcus, Washington, D. C., Glenn M. Engelmann, William A. Porteous, III, New Orleans, La., for C. P. Chemical Co., Inc., et al.
 Barry Grossman, Andrea Limmer, Dept. of Justice, Antitrust Div., Washington, D. C., for respondent in both cases.
 Malcolm W. Monroe, New Orleans, La., Rogers, Hoge & Hills, New York City, Mary M. McNamara, Washington, D. C., for Formaldehyde Institute, et al.
 Petitions for Review of an Order of the Consumer Product Safety Commission.
 Before GEE, JOHNSON and GARWOOD, Circuit Judges.
 PER CURIAM:
 
 
 1
 These cases come before us on motions to determine the proper venue for the consideration of Petitions for Review pursuant to 15 U.S.C. § 2060 of a rule promulgated under 15 U.S.C. § 2058 by the Consumer Product Safety Commission on April 12, 1982 (12:00 noon Eastern Standard Time) generally banning all urea-formaldehyde ("U.F.") foam insulation manufactured for use in residences and schools, to be published at 16 C.F.R. Part 1306. The rule applies to U.F. foam insulation manufactured for such uses after 130 days following publication of the rule or the day after the expiration of the period provided for consideration of congressional veto, whichever is later.
 
 
 2
 Petitions for Review of the rule in question have been timely filed, at or about the same time, in this Court and also in the United States Court of Appeals for the District of Columbia.
 
 
 3
 Section 2060 of 15 U.S.C. provides for review of Consumer Product Safety Commission rules in part as follows:
 
 
 4
 "(a) Not later than 60 days after a consumer product safety rule is promulgated by the Commission, any person adversely affected by such rule, or any consumer or consumer organization, may file a petition with the United States court of appeals for the District of Columbia or for the circuit in which such person, consumer, or organization resides or has his principal place of business for judicial review of such rule.... The record of the proceedings on which the Commission based its rule shall be filed in the court as provided for in section 2112 of Title 28.
 
 
 5
 "...
 
 
 6
 "(c) Upon the filing of the petition under subsection (a) of this section the court shall have jurisdiction to review the consumer product safety rule in accordance with chapter 7 of Title 5, and to grant appropriate relief, including interim relief, as provided in such chapter...."
 
 
 7
 Proceedings in the courts of appeals to review orders of administrative agencies or commissions are governed by 28 U.S.C. § 2112, subsection (a), which contains the following provisions:
 
 
 8
 "If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals."
 
 COURSE OF PROCEEDINGS
 
 9
 The relevant chronology of events is as follows:
 
 
 10
 On April 12, 1982, a Petition for Review of the Commission's order was filed in this Court by The Formaldehyde Institute, Inc. ("for and on behalf of its members"), Virgil E. Stewart Jr. and William E. Nash, and was assigned this Court's docket number 82-4135. The filing stamp reflects the petition was filed at 11:00 a. m. (Central Standard Time), April 12, 1982. However, this Court's filing stamp clock does not record seconds. An unrebutted affidavit by these petitioners' counsel states that:
 
 
 11
 "As soon as the time clock stamp clicked, indicating 11:00 a. m., the clerk stamped the petition while affiant and Ms. McNamara observed affiant's watch, and affiant and Ms. McNamara determined that the stated petition was filed and stamped at one-half second after 11:00 a. m. Central Standard Time."
 
 
 12
 This petition alleges that The Formaldehyde Institute, Inc. (the "Institute") is a trade association, organized and existing under New York law with offices in New York, "comprised of 70 businesses and trade associations representing all phases of the formaldehyde industry" and that its business members include manufacturers and distributors of formaldehyde and products containing formaldehyde, some of which business members have their principal place of business in the Fifth Circuit. The petition also states that Stewart, doing business as R & S Enterprises, sells and installs U.F. foam insulation as defined in the Commission's rule, and resides and has his principal place of business in Mississippi, and that Nash is a Mississippi resident whose home is insulated with U.F. foam insulation as so defined. It is alleged that petitioners are adversely affected by the rule which, it is claimed, "will eliminate a distinct segment of the formaldehyde industry" and also "will severely damage the formaldehyde industry in its entirety by creating the totally unjustified apprehension among consumers that formaldehyde is a dangerous and unsafe substance regardless of application." It is further claimed that "the ban will cause significant harm to individual owners of homes in which U.F. foam insulation is installed." Petitioners challenge the rule on the grounds that the Consumer Product Safety Act (pursuant to which the Commission acted) "as applied here" deprives petitioners of property without "necessary and appropriate procedural safeguards" contrary to the due process clause of the Fifth Amendment, and that the Commission's findings in support of the rule are not supported by substantial evidence on the record taken as a whole, contrary to 15 U.S.C. § 2060(c). The relief sought is, inter alia, that the rule and its supporting findings be set aside.
 
 
 13
 Also on April 12, 1982 a Petition for Review of the rule was filed in this Court by C. P. Chemical Company, Inc. ("C. P. Chemical"), Hammersley Construction Co., Inc. ("Hammersley"), Metro Foam Insulators ("Metro") and some 41 other concerns, and was assigned this Court's docket number 82-4136. The filing stamp reflects filing at 11:00 a. m., April 12, 1982, and the above-referenced affidavit states that this petition was filed "immediately" after that in number 81-4135 and was stamped in by the clerk "not later than one second after 11:00 a. m. Central Standard Time."
 
 
 14
 It is alleged that these petitioners "are each adversely affected parties since they either manufacture, distribute or install a banned product" and that Hammersley and Metro have their principal places of business within the Fifth Circuit. The name and address of each petitioner is stated in the caption. They are not otherwise identified. An order is requested "prohibiting the Commission from disseminating false and baseless statements concerning Tripolymer 105." Other than this, there is no specific request for relief or statement of grounds for attacking the rule.
 
 
 15
 Yet a third Petition for Review of the order was filed on April 12, 1982, this by "Public Citizen" with the United States Court of Appeals for the District of Columbia, docketed as number 82-1417 in that Court. We are informed by counsel for all parties involved in these proceedings that this petition bears the official filing notation of the United States Court of Appeals for the District of Columbia reflecting a filing at ten seconds after 12:00 noon, Eastern Standard Time, on that day, and that this was in fact the time at which this petition was inserted in the filing stamp clock in the office of the clerk of that Court.
 
 
 16
 This petition, though it denominates "Public Citizen" as "petitioner," does not in any manner identify "Public Citizen," either as to whether it is an organization and if so of what nature, or by address (though the address of its counsel is given), nor does it state what interest "Public Citizen" has in the rule. There is no allegation in the petition that "Public Citizen" is a consumer or consumer organization, or that it is adversely affected by the rule or took any role in the proceedings before the Commission. It may be inferred that some complaint is made respecting the rule, but this is not expressly stated. No claimed legal or factual grounds are asserted as a basis for setting aside or modifying the Commission's actions. There is no request for relief. The petition does state:[1]
 
 
 17
 "This petition is limited to (a) provisions of the regulations pertaining to 'exemptions,' (b) the provisions of the regulations delaying their effective date, (c) and the failure of the regulations to apply to certain commercial and non-residential users of urea-formaldehyde foam insulation."
 
 
 18
 Shortly after the petition was filed in our cause No. 82-4136 one of the judges of this Court denied the application of C. P. Chemical, et al. for a temporary restraining order and an expedited appeal.
 
 
 19
 On April 13, 1982, the petitioners, in our cause No. 82-4135, filed with this Court an affidavit as to the filing in this Court of the above-referenced petitions and a certificate reflecting service thereof on the Attorney General, the Commission and C. P. Chemical, et al.
 
 
 20
 By letter to this Court from the Commission dated May 12, 1982, we are informed that "from the information that presently is available to us, we are unable to determine the circuit in which a proceeding was first instituted, and we are filing the list of the record (but not the complete record, which had not been prepared) with both circuits." It is indicated that the complete record will be filed when venue is determined. The letter recites the filing of the three petitions and the above-referenced officially marked filing times, indicates no other petitions are known of, and refers to the mentioned affidavit by petitioners in our cause No. 82-4135 and to an affidavit in behalf of Public Citizen.
 
 
 21
 The latter affidavit, dated May 10, 1982, is by a law clerk employed by "Public Citizen Litigation Group" and states that Public Citizen's petition was presented in the D. C. Circuit's clerk's office to a named deputy clerk, who, being advised of the importance of timely filing, "synchronized her watch" with the telephone time service, and that "precisely at noon" this deputy:
 
 
 22
 "... had the Petition for Review in her possession and was in the process of formally 'filing' them with the Court. The process of stamping the various copies of the petition and recording its receipt took 10 seconds. Then, as soon as ... (the deputy) completed her recordation tasks, she noted on the original petition, the copy that she had filed, and the copy she filed-stamped and returned to me, the time 12:00.10 p. m."
 
 
 23
 On May 14, 1982 petitioners in our cause No. 82-4135 filed with this Court their motion requesting that this Court determine that it is the proper forum for review of all petitions related to the rule, direct the Commission to file the record with this Court and direct that all other proceedings to review the rule be transferred to this Court. The motion is supported by an affidavit setting out the facts essentially as stated above. It asserts that the petitions in this Court were filed first, that the filing stamp time should control, and that these petitioners did, and Public Citizen did not, promptly serve copies of these petitions and affidavits of filing on all parties who participated in the Commission hearings concerning the rule, as provided by Fed.R.Ap.P., Rule 15(c). This motion also asserts that venue in this Court is proper for a variety of other reasons, including the following: that more petitions, involving more petitioners, have been filed in this Court, and that the interest in review of the rule on the part of those filing petitions in this Court is greater and more truly adversarial than that of Public Citizen, in that the petitioners here are directly and adversely affected by the rule and seriously challenge it, while Public Citizen has no direct interest in the outcome of the review proceeding and its petition "does not challenge the Rule" and is "a supportive filing which simply attempts to bolster the ban ordered by the Commission."
 
 
 24
 Public Citizen filed on May 24, 1982, with this Court its unverified opposition to the Institute's motion to determine venue, accompanied by the above-referenced May 10 affidavit. It claims that the affidavit establishes that the petitions "were filed contemporaneously, or perhaps the District of Columbia action was filed first." Venue in the District of Columbia is also urged because the Commission and "virtually all the attorneys ... are located in, or have offices in, Washington, D. C."; because "the industry challengers have substantial financial resources ... (but) Public Citizen, a nonprofit consumer organization, lacks the resources to engage effectively in nationwide litigation"; and because the "D. C. Circuit ... generally handles far more challenges to administrative action ...." Except as may be implicit in the foregoing, Public Citizen does not otherwise challenge any of the assertions made by any of the petitioners, and it has not filed any other pleadings or materials in this Court.
 
 
 25
 On May 26, 1982, C. P. Chemical, et al. filed in this Court their motion to determine venue, generally adopting the position taken in the previously filed motion of the Institute, et al.[2]
 
 
 26
 On May 29, 1982, counsel for the Institute, et al. advised this Court by letter that the time of filing information in the Public Citizen affidavit "is not corroborated by" the named deputy clerk, who, however, under the rules of that Court, cannot make an affidavit "without the appropriate request made to the D. C. Circuit."
 
 
 27
 On June 10, 1982, Gulf South Insulation and 146 other parties filed with this Court their petition to review the rule, which is pending as our docket number 82-4218, and on June 11, 1982, these parties filed a motion in support of the motions filed by the petitioners in our cause Nos. 82-4135 and 82-4136 to determine that venue in these proceedings lies with this Court. This motion asserts that the petitioners in cause No. 82-4218 are "involved in the manufacture, sale, and installation of Urea Foam Formaldehyde Insulation ('UFFI')," that they "represent approximately 80% of the entire UFFI industry, which will be decimated if the Rule were allowed to stand," that none of them "is located in the District of Columbia" and that a specified five of these petitioners have "their principal places of business in the Fifth Circuit." In support of this motion there is attached an affidavit of counsel for these petitioners relating conversations between affiant and the deputy clerk identified in the Public Citizen affidavit, as well as the chief deputy, generally as follows. Each affirms that the standard procedure, followed by this deputy and all other members of the staff, is to time stamp the filing "immediately, before taking any of the other necessary steps"; the deputy does not (and did not in April) wear a watch, and if she needed to determine that the time stamp machine was recording the correct time, she would call the telephone time service and contemporaneously insert a piece of paper in the time stamp machine to see if it gave the same time; she filed the Public Citizen petition but "has no recollection of following anything other than her normal procedures when she received" that petition, and believes the standard procedures (immediate time stamping, before docket number stamping, initialing and making other notations, etc.) are those she would have followed; favorable action by the Court on an appropriate motion is necessary to allow the deputy to sign a statement as to such matters.
 
 
 28
 We are informed that as of a current date the only papers on file in cause number 82-1417 in the District of Columbia Circuit are the referenced Public Citizen petition, a letter of May 19, 1982, from the Commission (presumably to the same effect as the above-referenced letter to this Court), the Commission's certified list of record documents, and a letter from that Court to the Commission.
 
 
 29
 SHOULD THIS COURT DETERMINE VENUE?
 
 
 30
 So far as we are able to determine, review petitions have been filed only in this Court and in the Court of Appeals for the District of Columbia. The period for timely filing Petitions for Review has expired. The Commission has, at least impliedly, left the venue determination entirely to the courts. The review petitions have now been on file for over two and a half months, and the motions to determine venue for more than six weeks. It appears that no petitions to determine venue have been filed in the Court of Appeals for the District of Columbia, that the D. C. Court has not taken any action looking to a determination of venue, and that all parties acquiesce in the venue determination being made by this Court. Specifically, the "opposition" of Public Citizen does not suggest that this Court not determine venue, but rather that it be determined that the proper venue is with the Court of Appeals for the District of Columbia. That this Court has jurisdiction to determine venue and, if it determines venue to be with it, to act on the Petitions for Review filed with this Court, is not challenged. Under these circumstances we hold that this Court may and should determine the venue question.[3]
 
 DETERMINATION OF VENUE
 
 31
 In Southland Mower Co. v. United States Consumer Product Safety Commission, 600 F.2d 12 (5th Cir. 1979), we noted that section 2112(a) enacted "a mechanical, first filing approach" to determining venue in cases such as this, made our venue ruling on the basis of a one-minute filing stamp difference, and stated, "Where one party 'succeeds in obtaining an earlier time stamp from the Clerk of one court the agency under review must file there.' " (Quoting from United Steelworkers of America v. Marshall, 592 F.2d 693, 696 (3d Cir. 1979).)
 
 
 32
 In this case the filing stamps in our Court reflect filings at 11:00 a. m., C.S.T. Although our filing stamp does not show seconds, it is undisputed that in docket numbers 82-4135 and 82-4136 the petitions were filed within less than ten seconds after 11:00 a. m., C.S.T. This information is consistent with that reflected by the filing stamp. On the other hand, it is undisputed that the filing stamp of the Court of Appeals for the District of Columbia shows that the Public Citizen petition was filed there at ten seconds after 12:00 noon, E.S.T. Consistent with our decision in Southland Mower, we assume that where the official filing stamp shows a time of filing, that the time so shown is intended to be the time of official filing. That, after all, would appear to be the purpose of having a filing stamp showing a time. Public Citizen has, in effect, attempted to impeach this showing, and the petitioners in this Court have attempted to impeach such impeachment. However, we have been furnished with no indication from the office of the clerk of the Court of Appeals for the District of Columbia that the Public Citizen petition was filed at any time other than as reflected by the file stamp, nor is there any indication that that Court has refused, or would refuse, a motion to allow or require its clerk's office to give a statement in this regard. In these circumstances, we determine that the Public Citizen petition was filed with the Court of Appeals for the District of Columbia at 10 seconds after 12:00 noon, E.S.T., as shown on the official filing stamp. As this is after the Petitions for Review in docket numbers 82-4135 and 82-4136 were filed in this Court, we determine that venue is in this Circuit.
 
 
 33
 Even if we were unable to ascertain in which court Petitions for Review were first filed, then we would still determine that venue is in this Circuit. Though venue be proper in a given court of appeals based on priority of filing, such court is nevertheless authorized to "transfer" the proceedings to another court of appeals "(f)or the convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a). We assume a somewhat similar standard applies to initially determine venue when priority of filing cannot be ascertained.[4]
 
 
 34
 In making this determination we accord little weight to the fact that the Commission is located in the District of Columbia. The Commission has not taken a position respecting venue (or transfer), and Congress, presumably knowing where the Commission would, or would likely, be located, gave no preference to the District of Columbia as the venue for review of Commission orders. Congress, in effect, left the initial venue choice to the petitioning parties, not to the Commission. We do not find the location of the attorneys a significant basis for determining venue here. Review, after all, is on the record, which is filed with the court of appeals. While Public Citizen asserts that many of the petitioners in this Court are represented by Washington, D. C. counsel, such petitioners are also represented by counsel from within this Circuit and representation by Washington, D. C. counsel may in large part merely reflect the fact that proceedings before the Commission took place there. In any event, the convenience of the parties, not of their counsel, is the more appropriate concern, and the petitioners in this Court have expressed their desire for venue to be in this Circuit. Nor do we find determinative Public Citizen's assertion that it "lacks the resources to engage effectively in nationwide litigation." If making an appellate oral argument outside of the area where one's office is located constitutes engaging in "nationwide litigation," which we doubt, it is nevertheless something which parties desiring to participate in review of Commission orders must anticipate. Moreover, making such an argument requires far less resources than those required to effectively represent consumer interests before the Commission or to brief and prepare for argument on review proceedings.
 
 
 35
 Two factors lead us to conclude that, under a "convenience of the parties in the interest of justice" standard as applied to the unusual circumstances of this case, venue is proper in this Circuit.
 
 
 36
 First, more Petitions for Review have been filed in this Court and more petitioners seek review here, and of course, a number of such petitioners have their residences or principal places of business within this Circuit. These petitioners assertedly represent some 80 percent of the affected portion of the industry. In contrast, only one petitioner, Public Citizen, has sought review in another Circuit. Of course, it is possible that a consumer organization may, in a generalized sense, represent and "speak for" a large body of consumers, and hence in a proper case the Petition for Review of such an organization might be considered as the equivalent of one on behalf of numerous petitioners. However, Public Citizen's Petition for Review does not reflect that it is a consumer organization, and although it so describes itself in its "opposition" filed in this Court, there is no statement that it sought review in such capacity. More importantly, there is no indication as to whether in these proceedings it claims to speak for consumers generally, or for a particular class or type of consumer, or whether it merely seeks to foster what it believes to be desirable public policy either for the benefit of consumers or for more general considerations. Nor do we have any information reflecting on the relationship between Public Citizen and consumers, either in these proceedings or generally, such as whether it conducted surveys or received citizen complaints or the like directed to the subject matter of the Commission's rule or whether its usual operations have broad consumer support or "input" or the like. We do not hold that any such information is necessary to confer standing. However, we do believe that the almost complete absence of information about Public Citizen and its relation to consumers and this case has some relevance when we weigh the relative "convenience of the parties" and the "interest of justice."
 
 
 37
 Second, the nature and quality of Public Citizen's position in these proceedings appears to be significantly different from that of the other petitioners. We do not suggest that for venue purposes a distinction can be made between parties to a review proceeding on the basis of whether they are consumers, or consumer organizations, as opposed to being manufacturers, distributors, installers or the like. Under section 2060(a), consumers and consumer organizations have an equal right, along with adversely affected parties, to seek judicial review of a Commission rule. However, in our opinion section 2060 does imply that the party petitioning for judicial review is attacking the Commission's rule, rather than seeking to uphold it. While Public Citizen apparently seeks in the review proceedings to broaden the rule in some respects, neither in its petition nor otherwise so far as we are informed has it set forth any basis on which it claims entitlement to such relief. No legal or factual error on the part of the Commission is asserted. While section 2060(c) plainly reflects that a Commission rule may not be sustained unless the Commission's findings "are supported by substantial evidence on the record taken as a whole," it is less than clear when the courts may require the Commission to adopt a rule or to prohibit a particular practice. The petitioners in this Court have asserted that Public Citizen's predominant position and interest in these review proceedings is to bolster and uphold the actions of the Commission, not to attack it. Public Citizen has not responded to these assertions. We find at least some slight corroboration for these assertions in the lack of reply to them, in the content of Public Citizen's Petition for Review, in the minimal nature of its filings to date in this Court and in the Court of Appeals for the District of Columbia, in its assertion the substance of which is that it lacks the resources to present oral argument in this Circuit, and in the absence of evidence indicating the nature of its participation before the Commission. By contrast, it cannot be doubted that the overriding interest of the petitioners in this Court is to vigorously attack the Commission's action across the board,[5] not to uphold any of it, and that these petitioners are actively pursuing this relief and have alleged at least colorably valid bases on which to do so.
 
 
 38
 For these reasons, we conclude that even were we unable to ascertain which circuit was that in which filing was first made, we would nevertheless determine venue to be in this Circuit. We do not suggest that either decision is anything other than an extremely close one, but close or not we must decide. Moreover, we are not to be understood as ruling that the above-referenced considerations (apart from priority of filing) favoring venue in this Circuit are sufficiently persuasive to mandate a transfer out of the court of first filing under the last sentence of section 2112(a). That question is not before us and we do not decide it, though we express some doubt that such factors in this case are strong enough to place the ultimate decision on review in a court in which the Petition for Review was clearly filed subsequently to that in another court. Here, however, we certainly are unable to determine that any court has priority of filing over the Fifth Circuit. In these circumstances, the barest tipping of the scales in favor of venue in this Circuit becomes decisive.
 
 
 39
 Accordingly, it is ORDERED that this Court determine venue of these actions; that venue in this Court's docket numbers 82-4135, 82-4136 and 82-4218 is determined to be in this Circuit; that all now pending Petitions for Review of the referenced rule of the Consumer Product Safety Commission be consolidated in this Court; and that the Consumer Product Safety Commission file the record with the clerk of this Court.
 
 
 
 [1]
 We have been furnished what is represented to be a copy of this petition by the petitioners in our cause No. 82-4135 with their motion to determine venue. No party has questioned its accuracy or completeness or furnished us any other information as to its contents
 
 
 [2]
 This motion further identifies C. P. Chemical as a "small business enterprise, which manufactures the resin and foaming agent for a foam insulation product marketed under the name Tripolymer 105" and the other petitioners in our cause No. 82-4136 as "small businesses or proprietorships which distribute Tripolymer 105 and install the insulation material in homes and other buildings." It is asserted that the Commission announced (inferentially before April 12, 1982) that its rule banning U.F. foam insulation encompassed Tripolymer 105. On June 16, 1982, C. P. Chemical, et al. filed with this Court a request for immediate decision on venue, asserting this was required so a prompt decision on the merits could be made and to allow petitioners to apply for interim relief staying the Commission's ban of Tripolymer 105 and restraining it from making damaging, misleading statements concerning this product. These petitioners assert that without such interim relief, or if the rule becomes effective prior to a decision on the merits, they will be forced out of business and so financially harmed as to be unable to go back into business in the event the Commission's ban on Tripolymer 105 is ultimately set aside. To this June 16, 1982, motion there is appended a purported copy of an April 14, 1982, Commission memorandum stating in part as follows:
 "Based on the information now available, but subject to change in the event that new information becomes available, it is the staff's preliminary opinion that Tripolymer 105 falls within the definition of urea-formaldehyde foam insulation as specified in the Commission's ban. However, based on currently available information, the Commission's staff cannot conclude whether any release of formaldehyde from Tripolymer 105 would be significant or insignificant."
 
 
 [3]
 In certain cases where motions to determine venue were pending in this Court and in another court of appeals, or where the parties disputed which court of appeals should determine the venue question, or where another court of appeals had taken some action in the case, we have followed various informal consultation procedures with the other court of appeals in connection with resolving which court should determine the venue question. See, e.g., Southland Mower Co. v. U.S. Consumer Prod. Safety Comm'n, 600 F.2d 12, 13 (5th Cir. 1979); United Steelworkers of America v. Marshall, 592 F.2d 693, 695 (3d Cir. 1979); American Pub. Gas. Ass'n v. Federal Power Comm'n, 555 F.2d 852, 861 (D.C.Cir.1976). No such factors are present here and, under the circumstances referenced in the text, such procedures are accordingly not employed in this case
 
 
 [4]
 No party has requested, alternatively or otherwise, any "transfer" pursuant to the last sentence of section 2112(a)
 
 
 [5]
 A possible exception to this is the petitioners in our cause number 82-4136 whose attack may be limited to the inclusion of Tripolymer 105