**RADUGA USA CORP., Nikolai Romanavskiy, and Vladlena Yakovleva, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF STATE, Colin Powell, Secretary of State, Maura Harty, Assistant Secretary for Consular Affairs, Catherine Barry, Director of Visa Department, United States Embassy in Moscow, Alexander Vershbow, United States Ambassador, James Pettit, Consul General for U.S. Embassy in Moscow, Constance Anderson, Immigrant Visa Unit Chief for U.S. Embassy in Moscow, Tom Ridge, Secretary Department of Homeland Security, Eduardo Aguirre, Jr., Director of U.S. Citizenship and Immigration Services, Defendants.**

No. 04 CV 996 BTM(BLM).

United States District Court,
S.D. California.

May 23, 2005.

Order Granting Motion to Supplement
Complaint and Vacating Judgment
March 3, 2006.

■

Kenneth White, White and Associates, Tifany E. Markee, Milner and Markee, San Diego, CA, for Plaintiffs.

Samuel W. Bettwy, US Attorney's Office, San Diego, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; ISSUING WRIT OF MANDAMUS AGAINST THE UNITED STATES CONSULATE

MOSKOWITZ, District Judge.

On May 14, 2004, Plaintiffs filed a complaint for declaratory and injunctive relief and a writ in the nature of mandamus. Plaintiffs allege that Defendants have unlawfully withheld and unreasonably delayed Plaintiffs Romanavskiy and Yakoveleva's visa applications. Pursuant to the Court's scheduling order, the parties filed cross motions for summary judgment. In its moving papers, the government claimed that the United States consul was imminently processing Plaintiffs' visa applications. At oral argument, the government confirmed that the United States consul would soon render a decision on Plaintiffs' pending visa applications. In response, the Court set the matter for status hearing on February 25, 2005. At the hearing, the government informed the Court that the consul had not yet made any decision granting or denying Plaintiffs' visa applications. The case was then submitted. To date, no consular official has not rendered a decision on Plaintiffs' visa applications which have been pending now for over four years.

### I. BACKGROUND

On August 10, 2000, Plaintiff Raduga USA Corp. ("Raduga USA") submitted an I–140 Immigration Petition for Alien Worker on behalf of Raduga USA's president and sole shareholder, Mr. Romanavskiy (and Ms. Yakovleva as his dependent). On November 30, 2000, the

California Service Center of the Immigration and Naturalization Service (now known as U.S. Citizenship and Immigration Service) approved the petition and forwarded it for processing.

On April 8, 2001, Mr. Romanavskiy and Ms. Yakovleva applied for immigrant visas pursuant to the approved I–140 petition at the United States Embassy in Moscow, paid the appropriate application fees, and submitted the required medical exam forms and police certificates. Plaintiffs were then interviewed by a consular official who did not render a final decision on their visa applications. Nearly two years later, the consular scheduled a second interview with Plaintiffs for February 4, 2003 regarding their initial visa applications. In preparation for the second interview, Plaintiffs underwent renewed medical exams, gathered new certificates, and paid new application fees. Plaintiffs were interview by the chief of the immigration unit, Julie Furuta–Toy. However, Ms. Furuta–Toy did not render a final decision on Plaintiffs' applications after the second interview.

Around December 30, 2003, a consular official requested new medical examinations and police certificates from Plaintiffs. For the third time, Plaintiffs underwent medical exams, collected the required certificates, and submitted them to the consul. The Embassy confirmed receipt on January 21, 2004. On February 5, 2004, the consul informed Plaintiffs that they would be required to attend a third interview. However, it is unclear whether this third interview ever took place. Plaintiffs' counsel contacted the Embassy and United States Department of State numerous times regarding a final decision on Plaintiffs' visa applications.

## II. Discussion

Plaintiffs contend that Defendant's have violated the Administrative Procedures Act ("APA") by failing to process and issue a final decision on Plaintiffs' visa applications which have been pending now for approximately four years. Plaintiffs seek to compel Defendants, through a writ of mandamus, to either grant or deny Plaintiff's pending visa applications. Defendants contend that Plaintiff Raduga USA lacks standing, that venue is improper and that this case should be dismissed pursuant to the doctrine of consular non-reviewability. The Court disagrees. For the reasons expressed below, the Court hereby GRANTS in part Plaintiffs' summary judgment motion and issues a writ of mandamus directing the United States consul to render a final decision on Plaintiffs' visa applications.

### A. Standing

"Standing involves both constitutional requirements and prudential limitations." *United States v. Mindel,* 80 F.3d 394, 396 (9th Cir.1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Article III dictates the constitutional requirements of standing. *Id.* The prudential limitations are rules of self-governance derived from the Supreme Court's requirement that Congress make its intention clear before the Court will construe a statute to confer standing on a plaintiff. *Id.; Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1175 (9th Cir.2004).

#### 1. Constitutional Requirements

Constitutional standing contains three elements: (1) plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged action by the defendant; and (3) it must be likely that the injury will be redressed by a favorable court decision. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130(citations omitted). The party invoking federal ju-

risdiction bears the burden of establishing these elements. *Id.* at 561, 112 S.Ct. 2130 (citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof ...." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.

### a. INJURY IN FACT

■ It is well settled that an injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical ...." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citations and internal quotation marks omitted). Defendant contends that Plaintiff Raduga USA lacks standing because it has no cognizable injury in fact. The Court disagrees.

■ Plaintiff Raduga USA submits, by way of affidavit, that consulate inactivity has resulted in lost sales in the past and will cause further losses and stagnation in the future, including postponement of business plans. *See Black Faculty Ass'n of Mesa College v. San Diego Community College Dist.,* 664 F.2d 1153, 1155 (9th Cir.1981) (the plaintiff must "show a direct, individualized injury") (citation omitted). More specifically, Operating Manager and Vice President Simon itsygin avers that without the assistance of Plaintiff Romanovskiv, Raduga USA has lost $2 million in sales over the past three years. (Itsygin Decl. ¶ 7.) *See Sec'y of Labor v. Farino,* 490 F.2d 885, 889 (7th Cir.1973) ("It is clear that [plaintiff-employers] have adequately alleged that they will be economically injured if not permitted to employ these aliens."); *Encuentro Del Canto Popular v. Christopher,* 930 F.Supp. 1360, 1370 (N.D.Cal.1996) (recognizing that "[t]he harm which confers standing upon

[the plaintiff-organizations] is the denial of the opportunity to associate with the excluded members," but denying mandamus relief on other grounds). Mr. Itsygin further declares that, due to uncertainty in Plaintiff Romanoskiy's status, Raduga USA has not been able to establish long-term contracts, open a San Diego retail outlet, or begin its laser and optical products project. (Itsygin Decl. ¶¶ 6, 8–9.) *See Ass'n of Data Processing v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (finding "future loss of profits" satisfied injury in fact requirement in an APA mandamus action). Thus, Raduga USA has clearly established a concrete, cognizable injury in fact. *Cf. Soltane v. United States Dep't of Justice,* 381 F.3d 143, 145 (3d Cir.2004) (implicitly recognizing standing of plaintiff-organization, on behalf of alien employee, in action seeking review of visa denial); *cf. Sierra Club,* 405 U.S. 727, 733–34, 92 S.Ct. 1361, 31 L.Ed.2d 636 ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review.").

### b. FAIRLY TRACEABLE

■ Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). "[T]his requirement is only implicated where the concern is that an injury caused by a third party is too tenuously connected to the acts of the defendant." *Citizens for Better Forestry v. United States Dep't of Agric.,* 341 F.3d 961, 975 (9th Cir.2003) (citing *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1518 (9th Cir.

1992)). Here, Plaintiffs contend that the consulate has unreasonably failed to process Mr. Romanavskiy's and Ms. Yakovleva's visa applications which have been pending now for four years. However, Plaintiffs purport to seek a writ of mandamus against all Defendants, not only the consular officers. Plaintiffs' request is overbroad.

■ "[I]t is uncontested that only the State Department consular officers have the power to issue visas." *Patel v. Reno,* 134 F.3d 929, 933 (9th Cir.1997) (citing 8 U.S.C. §§ 1101(a)(9), (16); 1201(a)). Not even the Secretary of State has the power to review a consular official's visa decision. *Id.* (citing *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir.1986)). Any delay in processing Plaintiffs' visa applications is therefore traceable solely to the consular officials and not to any of the other named Defendants. Granting summary judgment against government entities and officials without power to issue a visa would be improper. *See id.* (concluding that summary judgment in favor of "all entities and officials without the power to issue a visa was properly granted by the district court;" but, summary judgment in favor of the consulate was not); *Luo v. Coultice,* 178 F.Supp.2d 1135, 1140–41 (C.D.Cal.2001) ("[M]andamus is an inappropriate remedy with regard to nonconsular officials, whose duties were discretionary.") (internal quotation marks omitted).[1] Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment against all Defendants other than the properly named United States consulate officials. Because Plaintiffs' injury

here is directly traceable to the consular's nondiscretionary duty to make a final decision on Plaintiffs' visa applications, the Court proceeds to the next prong to determine Plaintiffs' standing.

#### c. REDRESSABILITY

■ "The final standing inquiry, redressability, requires a court to determine whether it possesses the ability to remedy the harm that a petitioner asserts." *Citizens for Better Forestry,* 341 F.3d at 975–76. Plaintiffs here seek a writ of mandamus directing the consular officials to make a final decision on Plaintiffs' visa applications. Under 22 C.F.R. § 42.81(a), the consul is required to make a final decision on all visa applications. *See* 22 C.F.R. § 42.81(a); *Patel,* 134 F.3d at 932 ("A consular office is required to act on visa applications."). Plaintiffs' visa applications have been pending for four years with no decision. The government does not contest this. Instead, the government contends that the doctrine of consular nonreviewability deprives Plaintiff Raduga USA of standing in this case. The government's argument is not well taken.

Normally the consular's actual decision to grant or deny a visa petition is not subject to judicial review. *Id.* (citing *Li Hing,* 800 F.2d at 971; *Ventura–Escamilla v. INS,* 647 F.2d 28, 30 (9th Cir.1981)); *Luo v. Coultice,* 178 F.Supp.2d 1135, 1139 (C.D.Cal.2001) ("Plaintiffs cannot challenge the ultimate decision of the American consulate to deny the applications. Neither INS nor this court has any power to review visa decisions of consular officials.")

---

1. Plaintiffs argue that all Defendants are properly named because they each pay a indirect role in the visa process. (*See* Pls.' Opp. at 10.) In *Patel,* the plaintiffs similarly argued that mandamus was appropriate against all defendants because it would ensure that they refrained from hindering the consular's issuance of the visas. 134 F.3d at 933. How-

ever, the Court in *Patel* was unpersuaded and held that mandamus was an "inappropriate remedy with regard to these [other] officials and entities." *Id.* ("Such relief does not involve a nondiscretionary, ministerial duty, as required before a writ of mandamus can issue.") (citation omitted).

(citation omitted).[2] "However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists." *Patel*, 134 F.3d at 931–32 (footnotes omitted) (citing *Mulligan v. Schultz*, 848 F.2d 655, 657 (5th Cir.1988)).[3] The doctrine of consular non-reviewability is simply inapposite here.[4] Plaintiffs are not seeking to review the consul's decision. In this case, the consular official has *not* made any decision in four years to date. That is the crux of this case. Plaintiffs seek only to compel the consul to make a decision on their visa applications, which the consul is required to make in the first place pursuant to 22 C.F.R. § 42.81(a). *See Patel*, 134 F.3d at 932. Accordingly, the Court finds that Plaintiffs have sufficiently demonstrated Article III standing to bring this APA mandamus action.

### 2. *Statutory Requirements*

■ "[I]f a plaintiff has suffered sufficient injury to satisfy Article III, a federal court must ask whether a statute has conferred 'standing' on that plaintiff." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir.2004). Section 10(a) of the APA grants standing to any plaintiff "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The test here is "whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (emphasis added). *See also Cetacean*, 386 F.3d at 1176 ("[T]he relevant inquiry [is] whether the plaintiff is hurt within the meaning of that underlying statute."). "Under the zone-of-interests test a litigant lacks '[standing] if the plaintiff's interests are so marginally related to or inconsistent with the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Mindel*, 80 F.3d at 397 (quoting *Clarke v. Securities Industry Association*, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)).

■ Here, Plaintiff Raduga USA has clearly demonstrated that its interests are within the "zone of interests" protected by the statute. *See Data Processing*, 397 U.S. at 153, 90 S.Ct. 827. Indeed, Raduga USA claims that it has not been able to establish long-term contracts, open a San Diego retail outlet, or begin its laser and optical products project due to uncertainty in Plaintiff Romanoskiy's visa status. Fur-

---

**2.** The Court notes, as did the court in *Patel*, that there are exceptions to this general rule of non-reviewability. For example, judicial review exists if the consul denies the visa on illegitimate grounds. *Patel*, 134 F.3d at 933 n. 1 (citation omitted). Additionally, judicial review may also exist under the APA. *See id.*

**3.** *Cf. Luo*, 178 F.Supp.2d at 1140 ("It is possible that a district court could issue a writ of mandamus, under the reasoning of *Patel*, to compel the INS to act on an *initial* petition that has been suspended because the statutory and regulatory language suggest that the INS has some obligation to act on petitions.") (emphasis in original) (citing 8 U.S.C § 1154(b)).

**4.** The cases the government cites in support of its argument are likewise inapplicable. *See, e.g., Ventura–Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir.1981); *Centeno v. Shultz*, 817 F.2d 1212 (5th Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988); *Burrafato v. Dept. of State*, 523 F.2d 554, 556–57 (2d Cir.1975); *Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C.Cir.1999). In each of these cases, the consular official actually made a final decision denying the application. Moreover, all the cases found that the actual visa applicant and/or the petitioner/sponsor lacked standing because they sought *review* of the consular official's *final decision*. Thus, unlike this case, consular non-reviewability clearly applied.

thermore, Raduga USA states that it has lost $2 million in sales over the past three years precisely because the consul has failed to render a final decision on Romanoskiv's visa application. The economic harm to Raduga USA bolsters its standing. Moreover, it cannot be said that Plaintiff Raduga USA's interest in this suit is "marginally related to or inconsistent with the statute" in any sense. *Mindel*, 80 F.3d at 397.

Defendants contend that Raduga USA lacks standing because the I–140 petition that it filed on behalf of its potential employee/president, Plaintiff Romanoskiv, has been granted. Thus, Defendants argue that Raduga USA has no further interest in Plaintiffs' visa application. The I–140 Immigrant Petition for Alien Worker, however, cannot be viewed in isolation. Indeed, submitting the I–140 petition is a "preliminary step in the visa or adjustment of status application process" for a sought-after alien employee. *Matter of Ho*, 19 I. & N. Dec. 582, 589 (BIA 1988); *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir.1984) (citing 1A Gordon & Rosenfeld, *Immigration Law and Procedure* § 3.5(j)). *See also* Ira J. Kurzban, *Immigration Law Sourcebook* 657 (9th ed.2004–05) ("an approved ... I–140 ... is a precondition" to permanent resident status for a potential employee alien). Thus, while an approved I–140 petition is not the same thing as an actual approved visa, it is a necessary step and is inextricably tied into the overall visa application process. Raduga USA filed the I–140 petition in order to bring Plaintiff Romanoskiv, its potential employee/president, to the United States as a permanent resi-

dent. Receiving approval on the I–140 petition without a decision on Mr. Romanoskiv's corresponding visa application is virtually meaningless in accomplishing Raduga USA's purpose for filing the I–140 petiton in the first place—employing Mr. Romanoskiv in the United States. Thus, the fact that the I–140 petition has been approved, does not deprive Raduga USA of its interest or standing in the consul's failure to render a final decision on the visa applications.

Defendant cites to *Saavedra v. Albright* for the proposition that a plaintiff corporation lacks statutory standing to bring suit on behalf of its potential alien employee, 197 F.3d 1153 (D.C.Cir.1999).[5] The D.C. Cirduit's opinion in *Saavedra*, however, does not control in this case and is distinguishable on its facts and holding. Unlike the instant case, *Saavedra* held that the plaintiff corporation did not have standing to challenge the "denial or the revocation" of the potential employee's visa. 197 F.3d at 1164–65. *Saavedra* did not deal with the consul's failure to render a decision on a pending visa application after the peition had been granted. Furthermore, because the consul had actually denied the visa in *Saavedra*, the D.C. Circuit found that neither the alien employee nor its potential employer had standing to challenge the denial on the grounds of consular non-reviewability, not because the plaintiff corporation or the applicant lacked standing. *Id.* at 1164 ("[C]ourts have made no distinction between aliens seeking review of adverse consular decisions and the United States citizens sponsoring their admission; *neither is entitled to judicial review.*") (emphasis added).

**5.** In *Saavedra,* the D.C. Circuit stated in dicta that:

When [the American sponsor's] petition was granted and Saavedra received that classification, their cognizable interest terminated. Because their interest has already been sat-

isfied, the citizen sponsors have not been aggrieved "within the meaning of the relevant statute" and have no right of review under the APA even if APA review were available.
197 F.3d at 1164.

Furthermore, the language in *Saavedra* that goes on to opine that the United States potential employer's interest terminated when its petition had been granted is technically dicta. The D.C. Circuit had already held that nobody, neither the visa applicant nor the potential employer, could challenge the consul's denial of the visa application precisely because the consul's denial is unchallengeable under settled law. *Id.* Thus, *Saavedra* cannot serve to bar Raduga USA's standing in this case. *See Patel*, 134 F.3d at 931–32 ("[W]hen the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists."); *Farino*, 490 F.2d at 889; *Christopher*, 930 F.Supp. at 1370. Accordingly, the Court finds that the APA confers standing on Plaintiff Raduga USA because the company has been adversely affected by the consul's inaction. *See* 5 U.S.C. § 702. *See also Data Processing*, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 ("[T]he trend is toward enlargement of the class of people who may protest administrative action [under the APA]."); *Cetacean*, 386 F.3d at 1176 ("[C]ourts grant standing fairly generously under the APA.").

#### B. VENUE

The government's motion to dismiss for improper venue rested largely on their argument that Plaintiff Raduga USA lacked standing and should therefore be dismissed as a party. Because Raduga USA has standing in this case, the government's attack on venue fails. The Court

finds that venue is proper under 28 U.S.C. § 1391(e).

Section 1391(e)(3) provides that:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . (3) the plaintiff resides if no real property is involved in the action.

Plaintiff Raduga USA is a California corporation with its office located in San Diego. (Pls.' Compl. at 2.) *See Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5 F.3d 911, 921 (5th Cir.1993) ("For venue purposes the residence of a corporate plaintiff . . . is the place of incorporation.") (citing *American Newspaper Publishers Ass'ns v. United States Postal Serv.*, 789 F.2d 1090, 1092 (5th Cir.1986); *American Civil Liberties Union v. FCC*, 774 F.2d 24, 26 (1st Cir.1985)). *Cf.* 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). No real property is involved in this action. As such, venue is proper under § 1391(e).

#### C. MANDAMUS

 Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available. *Patel*, 134 F.3d at 931 (citing *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir.1986)).[6] Plaintiffs' claim satisfies this test.

---

6. The Mandamus and Venue Act of 1961 confers upon district courts original jurisdiction of "any action . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus will lie if a plaintiff can demonstrate that the govern-

ment official or agency has not performed a "clear nondiscretionary duty" owed to the plaintiff. *Briggs v. Sullivan*, 886 F.2d 1132, 1142 (9th Cir.1989). *See also Coleman v. Barnhart*, 2003 WL 22722816 at *2 (N.D.Cal. 2003).

The consul is required by law to make a final decision on all visa applications. *See* 22 C.F.R. § 42.81(a) (entitled "Issuance or refusal mandatory"); *Patel,* 134 F.3d at 932 ("A consular office is required to act on visa applications."). 22 C.F.R. § 42.81(a) expressly requires that "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer *must either issue or refuse the visa* under INA 212(a) or INA 221(g) or other applicable law." (emphasis added). Section 42.81(a) goes on to provide that "[e]very refusal must be in conformance with the provisions of 22 CFR 40.6."

█ Here, Plaintiffs simply seek to compel the consul to render a final decision on Plaintiffs Romanavskiy and Ms. Yakovleva's visa applications which is mandated under § 42.81(a). Plaintiffs' visa applications have been pending for four years with no decision. *See Patel,* 134 F.3d at 933 ("[R]emand[ing] for the district court to order the consulate to either grant or deny the visa applications."). Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed. Furthermore, Plaintiffs have no other means to compel the United States consul to make a decision. *See id.*

The government's counsel has twice submitted to this Court that the a final decision on Plaintiffs' visa application was forthcoming. Time has proved otherwise. The Court finds the consul's four year delay unreasonable and therefore issues a writ of mandamus directing the consul to render a final decision, either granting or denying Plaintiffs' visa applications pursuant to § 42.81(a).

## III. CONCLUSION AND ORDER

The Court finds that Plaintiff Raduga has standing, that venue is proper and that a writ of mandamus should issue. Plaintiffs' motion for summary judgment is hereby **GRANTED** in part. The Court finds the four year delay in deciding Plaintiffs' visa applications unreasonable and therefore **ISSUES** a writ of mandamus against the United States consular officials named as Defendants: Maura Harty, Assistant Secretary for Consular Affairs, Catherine Barry, Director of Visa Department, James Pettit, Consul General for United States Embassy in Moscow, and Constance Anderson, Immigrant Visa Unit Chief for United States Embassy in Moscow. Given the four year delay in this case, the United States consular officials shall render a final decision on Plaintiff Romanavskiy and Yakoveleva's visa applications no later than **sixty days** from the date this Order is stamped filed. *See Patel,* 134 F.3d at 933 ("Given the lengthy delay which has already occurred, the consulate's decision should be rendered no later than thirty days from the date this order is filed.").

Plaintiffs' motion for summary judgment is **DENIED** in part as to all non-consular Defendants. The Court hereby **DISMISSES** those named Defendants not listed above. The Clerk shall enter a final judgment in accordance with this Order. Any motion for attorney's fees shall be filed in accordance with Rule 54(d) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**ORDER GRANTING PLAINTIFFS' MOTIONS (1) TO FILE A SUPPLEMENTAL COMPLAINT [Doc. # 59] AND (2) TO VACATE JUDGMENT [Doc. # 61]**

In August 2000, Plaintiff Raduga USA Corp. ("Raduga") filed an I–140 Immigration Petition for Alien worker on behalf of

its president and sole shareholder, Plaintiff Nikolai Romanovskiy, and on behalf of Plaintiff Vladlena Yakoleva as Romanovskiy's dependent. In April 2001, following the approval of the I–140 petition, the individual Plaintiffs applied for immigrant visas at the U.S. Embassy in Moscow. On May 14, 2004, unable to obtain any decision on these applications, Plaintiffs brought an action seeking an order to compel the U.S. consulate in Moscow to adjudicate the visa applications of Romanovskiy and Yakovleva. By order dated May 23, 2005, the Court agreed with Plaintiffs and issued a writ of mandamus against the U.S. consular officials, ordering them to render a decision on the visa applications.

The Acting Under Secretary of Homeland Security for Border and Transportation Security, through the Deputy Assistant Secretary for Visa Services of the Department of State, rendered a decision on July 20, 2005. The individual Plaintiffs' applications were denied. Twice, on July 25 and July 28, the Court extended the deadline to enable the Defendants to review supplemental materials submitted by the Plaintiff. The Defendants were apparently not persuaded by these materials, and the denial stood. Plaintiffs have now brought the current motion for leave to supplement their complaint under Fed.R.Civ.P. 15(d). The Plaintiffs have also moved to set aside the judgment under Fed.R.Civ.P. 60(b) if the Court grants their 15(d) motion. For the reasons discussed below, Plaintiffs' motions are **GRANTED**.

## I. DISCUSSION

Plaintiffs' proposed supplemental complaint adds several defendants, including Randy Beardsworth, Acting Under Secretary of Homeland Security for Border and Transportation Security, and Christine Poulos, Director of the USCIS California Service Center. Proposed Supp. Compl., 12–13. While the original complaint sought a writ of mandamus compelling the original Defendants to render a decision on the visa applications, the proposed supplemental complaint asks the Court to set aside the unfavorable visa application decisions and order they be approved, or alternatively, be reviewed in good faith. *Id.* at 32–33. Plaintiffs contend that this further relief is necessary because the Defendants' ultimate decision to deny the visa applications was "facially illegitimate" and in violation of the Administrative Procedure Act.

Fed.R.Civ.P. 15(d) provides:
Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

Leave to permit a supplemental pleading is favored, though it cannot be used to introduce a separate, distinct, and new cause of action. *Planned Parenthood of S. Ariz. v. Neely,* 130 F.3d 400, 402 (9th Cir.1997) (per curiam) (internal citations and quotations omitted). Motions to amend pursuant to the rule should be granted absent undue delay, dilatory tactics, undue prejudice, or futility. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995). *See also LaSalvia v. United Dairymen of Ariz.,* 804 F.2d 1113, 1119 (9th Cir.1986) (15(d) motion should be granted unless "undue prejudice to opposing party will result"). The goal of Rule 15(d) is to promote judicial efficiency. *Id.; Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir.1988). Rule 15(d) enables "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *Keith,* 858 F.2d at 473 (quoting *New Amsterdam Casualty Co. v. Wal-*

ler, 323 F.2d 20, 28–29 (4th Cir.1963)) *cert. denied* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964).

Here, Plaintiffs' supplemental pleadings sets forth events that have occurred since the filing of the original complaint. However, the Court entered final judgment in its May 23, 2005 order. At least one court has held that this fact, absent certain exceptions, precludes the Court from granting the requested relief. *See, e.g., Van Deelen v. Shawnee Mission Unified School Dist. # 512,* No. Civ. A. 03–2018–CM, 2004 WL 2278663 (D.Kan. June 16, 2004). Still, Plaintiffs have pointed to several cases in which courts have granted 15(d) motions following the entry of a final order in the original action.

■ One of these cases, *Griffin v. County School Board,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), is particularly instructive. In *Griffin,* the original final judgment ordered the Virginia school system to take steps to end discrimination. *Id.* at 222. In permitting the supplemental complaint, the Supreme Court noted that its allegations detailed a "continued, persistent" effort to circumvent a prior ruling. *Id.* at 226. Here, similarly, the proposed supplemental complaint alleges that Defendants have not complied with this Court's order because their decision was not made in good faith, but was instead arbitrary and capricious. Mot. at 7. According to Plaintiffs, the decision to deny the visa was in bad faith and potentially a retaliation for the filing of the mandamus action. *Id.* Because Raduga's new complaint alleges a failure to comply in good faith with the Court's previous order, the grant of Plaintiffs' 15(d) motion is permissible.

Additionally, the Court notes the absence of undue prejudice to Defendants or dilatory tactics by Plaintiff. Most of the Defendants named in the amended complaint were named in the original complaint. One new party, Randy Beardsworth, made the decision to deny the visas, while the other new parties have become defendants due to the consulate decision to refer Raduga's petition to USCIS for revocation. Furthermore, Plaintiffs acted swiftly to assert their rights following the denial of the visa petitions. On August 4, 2005, they filed an ex parte application which requested either (1) an order requiring a good faith determination on the visa application or, alternatively, (2) leave to amend their pleadings. On August 22, 2005, the Court denied the ex parte application and instructed Plaintiffs to comply with the Federal Rules if they wished to file amended pleadings. On October 13, 2005, Plaintiffs filed the current motion, which was set for hearing on December 2, 2005. Thus, Plaintiffs did not cause any unreasonably delay in seeking to amend their pleadings. Because the complaint alleges that Defendants have not complied in good faith with the Court's mandamus order, and because the Court finds no undue delay or prejudice if the Plaintiffs' 15(d) motion is granted, the motion to file a supplemental complaint is **GRANTED**.

Plaintiffs have also requested the Court grant their motion to vacate judgment under Fed.R.Civ.P. 60(b) because the Court entered final judgment when it issued the mandamus order. Rule 60(b) states that "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for … (6) any other reason justifying relief from the operation of judgment." Unlike the cases previously cited, in which the respective courts retained jurisdiction after entry of a final order granting injunctive relief, the Court here did not retain jurisdiction. *See Allen v. County Sch. Bd. of Prince Edward County, Va.,* 266 F.2d 507, 511 (4th Cir.1959) (*Griffin* predecessor case which ordered district court to retain jurisdiction

to enforce decree banning segregated schools); *Keith,* 858 F.2d at 474 (noting that the district court retained jurisdiction to ensure compliance with order). In order to exercise jurisdiction over the supplemental complaint in this matter, the Court will vacate its final judgment and orders that the case be reopened. The Court therefore **GRANTS** Plaintiffs' motion to vacate the judgment under Rule 60(b).

## II. CONCLUSION

For the reasons discussed, Plaintiffs' motions [Doc. # 's 59 & 61] are GRANTED. The Court hereby orders that Plaintiffs file and serve its supplemental complaint on Defendants within 30 days of the date this order is stamped "FILED."

**IT IS SO ORDERED.**